UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **United States of America,**<br><br>v.<br><br>**Samuel H. Powell,**<br><br>**Defendant.** | Case No. 1:94-cr-00316 (ESH) |

**UNOPPOSED EMERGENCY MOTION FOR COMPASSIONATE RELEASE**

Samuel H. Powell, through counsel, respectfully requests that this Court order his compassionate release under 18 U.S.C. § 3582(c)(1)(A) because of the COVID-19 global pandemic. The United States, through Assistant United States Attorney Dineen Baker, is not opposed to the proposed order granting his request.[1]

Mr. Powell is 55-years-old, suffers from several respiratory problems (including sleep apnea and asthma), and has only 3 months remaining on his 262 month sentence.[2] He is set to be released on June 16, 2020. Currently, he is incarcerated at the Correctional Treatment Facility ("CTF") in DC. Just yesterday, on March 26, 2020, the DC Jail confirmed that an inmate inside of CTF—the exact facility where Mr. Powell is incarcerated—has tested positive

---

[1] The government kindly notified counsel that it had no opposition to Mr. Powell's request for release under 18 U.S.C § 3582(c)(1) before counsel had drafted the motion. Counsel has since provided the motion and proposed order to government to confirm its position, but as of the filing of this motion has not yet heard back.

[2] He was sentenced to 262 months for attempted bank robbery (count 1); using a firearm in furtherance of the attempted armed bank robbery (count 2); escaping from custody (count 3); and armed bank robbery (count 4). *See* Judgement, ECF No. 29.

for COVID-19.  *See* Keith Alexander, *After D.C. jail confirms first inmate with covid-19, officials isolate 36 other inmates*, the Washington Post (Mar. 26, 2020).[3]  This inmate has been jailed since July 29, 2019, and has not been to court since January 27, 2020.  *Id.*  Surely, when more tests are conducted, more positive cases will be uncovered.

On March 23, 2020, the parties jointly requested that the Court recommend to the Bureau of Prison that he be placed in home confinement to serve the remainder of his sentence. *See* ECF No. 93.  The next day, on March 24, 2020, this Court granted the request and made the recommendation.  *See* ECF No. 95.  However, the BOP recently notified defense counsel that it will *not* follow this Court's recommendation.  It stated that Mr. Powell is ineligible for community programs including home confinement because he has an open case, detainer or warrant.[4]  As a consequence, Mr. Powell will remain incarcerated at CTF, where there is at least one known highly contagious carrier of COVID-19, to serve the last 3 months on his 262 month sentence.  This is absurd.

Courts all over the country, in various procedural postures, are acknowledging the reality

---

[3] Available at https://www.washingtonpost.com/local/public-safety/after-dc-jail-confirms-first-inmate-with-covid-19-officials-isolate-36-other-inmates/2020/03/26/4610cd86-6f68-11ea-b148-e4ce3fbd85b5_story.html (last visited Mar. 27, 2020).

[4] Mr. Powell currently has an open case in the D.C. Superior Court (Case No. 2020-CMD-01702).  The charge is for a misdemeanor offense.  According to police reports, Mr. Powell allegedly assaulted a fellow inmate at the Half Way House in response to the "continuously harassing and . . . derogatory comments [the complainant made] towards [Mr. Powell's] friend who happens to be transgender and housed in the same location."  *See* Ex. F at 2.  At the detention hearing, *the Superior Court released him on personal recognizance. Id.* at 3-6.  In addition, the prosecutor offered him a deferred sentencing agreement.  Progress on the case has been postponed, however, because of the current pandemic.  So Mr. Powell now finds himself in an impossible situation:  The BOP says he is ineligible to be released from federal custody because he has an open case in D.C. Superior Court.  The problem: his case in D.C. Superior Court will remain open throughout the pandemic *because* of the pandemic.

of the danger of COVID-19 in detention facilities and the uncontroverted evidence—provided in sworn statements by medical experts, *see* Exs. A-E—that it is safer for the entire community if inmates, like Mr. Powell, who are at high-risk of contracting the virus and who do not pose any immediate danger to others, are released from custody.[5] Judge Moss recently released a defendant charged with both gun and drug offenses from pretrial detention in light of the COVID-19 pandemic.  *See* Min. Order, *United States v. Brent Jaffee*, No. 19-cr-88 (RDM) (D.D.C. Mar. 26, 2020).  As he stated,

> [T]he Court is now convinced that incarcerating the defendant while the current COVID-19 crisis continues to expand poses a greater risk to community safety than posed by Defendant's release to home confinement. All responsible government agencies have advised of the risk of transmission posed by large gatherings, and the Court understands the defendant is housed in a unit with dozens other detained individuals. The risk of the spread of the virus in the jail is palpable, and the risk of overburdening the jail's healthcare resources, and the healthcare resources of the

---

[5] *See Xochihua-James v. Barr*, No. 18-71460 (9th Cir. Mar. 23, 2020) (unpublished) (*sua sponte* releasing detainee from immigration detention "in light of the rapidly escalating public health crisis"); *United States v Garlock*, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020) (citing "chaos" inside federal prisons in *sua sponte* extending time to self-surrender: "[b]y now it almost goes without saying that we should not be adding to the prison population during the COVID-19 pandemic if it can be avoided"); *United States v. Perez*, 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (releasing defendant due to the "heightened risk of dangerous complications should he contract COVID-19"); *United States v. Stephens*, 2020 WL 1295155, __F. Supp. 3d__ (S.D.N.Y. Mar. 19, 2020) (releasing defendant in light of "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic"); *In re Manrigue*, 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020) ("The risk that this vulnerable person will contract COVID-19 while in jail is a special circumstance that warrants bail."); *In re Request to Commute or Suspend County Jail Sentences*, Docket No. 084230 (N.J. Mar. 22, 2020) (releasing large class of defendants serving time in county jail "in light of the Public Health Emergency" caused by COVID-19); *see also United States v. Matthaei*, 2020 WL 1443227, at *1 (D. Idaho Mar. 16, 2020) (extending self-surrender date by 90 days in light of COVID-19); *United States v. Barkman*, 2020 U.S. Dist. LEXIS 45628 (D. Nev. Mar. 17, 2020) (suspending intermittent confinement because "[t]here is a pandemic that poses a direct risk if Mr. Barkman . . . is admitted to the inmate population of the Wahoe County Detention Facility"); *United States v. Copeland,* No. 2:05-cr-135-DCN (D.S.C. Mar. 24, 2020) (granting compassionate release to defendant in part due to "Congress's desire for courts to release individuals the age defendant is, with the ailments that defendant has during this current pandemic").

      surrounding community is real. On the other hand, if defendant is confined at home and has contact only with his wife, the risk to him (including his heightened risk due to the underlying health condition he disclosed to the Court) and to others will be significantly reduced).

*Id.*; *see also United States v. Harris*, No. 19-cr-356-RDM, ECF No. 36 (D.D.C. Mar. 27, 2020) ("[W]e do not know with any certainty whether Harris will contract the virus if he remains at the D.C. Jail, and if he does, we do not know whether he will suffer from any severe symptoms. But uncertainty is endemic in the present circumstances, and that uncertainty cannot preclude courts from acting until the damage has been done.").

      In a similar vein, Attorney General William Barr recently directed the Bureau of Prisons "to increase the use of home confinement in a bid to stem the impact of the novel coronavirus on the system." *See* Matt Zapotosky, *Federal Bureau of Prisons will expand use of home confinement amid pandemic, attorney general says*, The Washington Post (Mar. 26, 2020)—attached as Ex. G.[6] In response, the BOP reported that it "was assessing its population to identify who had already served a substantial portion of their sentence, posed no threat and might have preexisting conditions that would make them particularly vulnerable." *Id.* Given that Mr. Powell arguably meets all of those criteria but nonetheless remains incarcerated, the BOP's response rings hollow.

      This Court has authority to order his immediate release into home confinement under the compassionate release statute in 18 U.S.C. § 3582(c)(1)(A)(i) as modified by the First Step Act. This statute, first enacted as part of the Crime Control Act of 1984, granted the district court authority to reduce a defendant's term of imprisonment where there were "extraordinary and

---

[6] Available at https://www.washingtonpost.com/world/2020/03/26/coronavirus-latest-news/ (last visited Mar. 26, 2020).

compelling reasons" warranting such reduction.  However, as originally enacted, the statute only gave the court authority grant compassionate release upon a motion by the Director of the BOP. *See* 18 U.S.C. § 3582(c)(1)(A)(i) (1984).

In 2018, however, Congress enacted the First Step Act, which amended § 3582(c)(1)(A)(i), and gave the Court greater authority.  Now, a defendant may file a motion with the court seeking reduction of his sentence for extraordinary and compelling reasons if: 1) the defendant has fully exhausted his administrative remedies; or 2) there has been a lapse of 30 days from the warden's receipt of the defendant's request, whichever is earlier.

Although Mr. Powell has not pursued the traditional path of exhausting administrative remedies, the Court should find them satisfied through the BOP's rejection of the Court's recommendation to have him placed in home confinement because of his health and COVID-19.

Alternatively, if the Court does not find them satisfied, it should waive the exhaustion requirement during this time of emergency.  The reality is that any appeal to BOP for administrative assistance in this matter will be futile given its recent decision *not* to follow this Court's recommendation to place him in home confinement.  Seeking BOP assistance would also be dangerously time consuming.  There is no valid reason to wait 30 days for the formal denial.  Waiting for 30 or even 10 days might prove to be too long.  Nothing is going to change between now and then other than that Mr. Powell will be in greater danger each day as he sits in the communal barracks, uses the communal bathroom, and eats his meals in the communal cafeteria. *See cf.* Sophie Kaplan, *Union votes 'no confidence' in D.C. Jail leaders for handling of COVID-19*, The Washington Times (Mar. 20, 2020) (noting that the "union representing corrections officers at the D.C. Jail unanimously voted 'no confidence' in the jail's leadership for

'guaranteeing and accelerating the rampant spread of COVID-19' after 50 inmates came in contact with a positive case of the coronavirus").[7]

Courts can dispense with the administrative exhaustion requirement where, as here, there are "exceptional circumstances of peculiar urgency . . . ." *Hendricks v. Zenon*, 993 F.2d 664, 672 (9th Cir. 1993) (*quoting Granberry v. Greer*, 481 U.S. 129, 134 (1987).[8] Indeed, in the compassionate release context, courts have recognized that the exhaustion of administrative remedies can be waived when seeking relief will be futile. *See, e.g.*, *Thody v. Swain*, No. 19-cv-09641, 2019 WL 7842560, *2 (C.D. Cal Nov. 26, 2019) ("A district court may, in its discretion, excuse the failure to exhaust if exhaustion would be futile," but finding the petitioners "conclusory allegations" to be insufficient to establish futility); *Merth v. Puentes*, No.1:19-cv-00251, 2019 WL 3003684, *3 (C.D. Cal July 10, 2019) ("As Respondent did 'not have the authority to grant any provision of the First Step Act without guidance from the Bureau of

---

[7] Available at https://www.washingtontimes.com/news/2020/mar/20/union-votes-no-confidence-dc-jail-leaders-handling/.

[8] *See also* 28 U.S.C. § 2254(b) (authorizing application for writ of habeas corpus in the absence of exhaustion of State remedies where "circumstances exist that render such process ineffective to protect the rights of the applicant."); *Garza v. Davis*, 596 F.3d 1198, 1203-04 (10th Cir. 2010) (recognizing a futility exception to the exhaustion requirement in 28 U.S.C § 2241 where the defendant sought his placement in a lower-security facility such as a community corrections center or a halfway house); *Woodall v. BOP*, 432 F.3d 235, 239 n.2 (3d Cir. 2005) ("[E]xhaustion would be futile, given that *Woodall* is not challenging the application of the BOP regulations, but their validity."); *Elwood v. Jeter*, 386 F.3d 842, 844 n.1 (8th Cir. 2004) (same); *Boucher v. Lamanna*, 90 F. Supp. 2d 883, 887 (N.D. Ohio 2000) (concluding that exhaustion of administrative remedies would be futile where the BOP's policy on categorizing the prisoner's offense as a violent crime was mandatory, the issue was a legal one that the BOP had consistently defended, and the potential for immediate release counseled timely consideration of the petitioner's case); *Fletcher v. Menard Correctional Center*, 623 F.3d 1171, 1174 (7th Cir. 2010) ("If it takes two weeks to exhaust a complaint that the complainant is in danger of being killed tomorrow, there is no 'possibility of some relief' and so nothing for the prisoner to exhaust.").

Prisons' . . . pursuing administrative remedies would have been futile. Accordingly, exhaustion can be waived.").

There is no longer time to have theoretical discussions about when COVID-19 will come to the D.C. Jail. It has already arrived. Now, each day in custody brings greater and greater risks to Mr. Powell. He has no way to practice "social distancing" or other protectives measures that are mandated by health officials throughout the nation and which promise some hope of surviving the consequences of infection. When more inmates get sick, there will be fewer infirmary beds and greater risk of contracting the virus. When the medical staff becomes ill, there will be fewer people to provide care. And when the correctional staff gets sick, there will be fewer officers available to bring sick people to the infirmary, hospital, or even just keep an eye on who is showing signs of illness. The combination of lack of adequate sanitation, close quarters, and limited medical capacity create the perfect storm. This storm is especially dangerous for people like Mr. Powell who, because of his age and preexisting respiratory problems, is particularly susceptible to contracting a life threatening illness and being unable to survive it.

Mr. Powell respectfully requests that this Court order his immediate compassionate release and impose the following supervised release conditions: 1) that Mr. Powell abide by the standard supervised release conditions; 2) that within 72 hours of release, Mr. Powell contact the U.S. Probation Office by phone for specific reporting instructions; 3) that Mr. Powell reside at his mother's residence, Sandra Powell, in Washington, DC, and be confined to the home—except when attending medical appointments or other activities approved by the U.S. Probation Office—until June 16, 2020.

A proposed order to this effect is attached.

Respectfully submitted,

A.J. KRAMER
Federal Public Defender

_____/s/_____
BENJAMIN FLICK
Research & Writing Attorney
Federal Public Defender's Office
625 Indiana Ave NW, Suite 550
Washington, D.C. 20004
(202) 208-7500

## Certificate of Service

      I certify that on March 27, 2020, a copy of Defendant's Emergency Motion for Compassionate Release was served via electronic mail upon:

Dineen A. Baker
U.S. Attorney's Office for the District of Columbia
555 Fourth Street, NW
Washington, D.C. 20530
(202) 252-6954
Dineen.baker@usdoj.gov

                                                    /s/
                                       BENJAMIN FLICK
                                       Research & Writing Attorney
                                       Federal Public Defender's Office
                                       625 Indiana Ave NW, Suite 550
                                       Washington, D.C. 20004
                                       (202) 208-7500